## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| Skylor Johnson,<br><br>On behalf of himself and all others similarly situated,<br><br>                      Plaintiff,<br><br>v.<br><br>Travis County, Texas,<br><br>                    Defendant. | Case No. 24-cv-0386 |

## CLASS ACTION COMPLAINT

1.      This action seeks a classwide declaration affirming the constitutional obligation of Travis County to provide counsel at initial bail hearings, referred to locally as "magistration." The lack of counsel at magistration fatally undermines the fairness of criminal proceedings in Travis County.

2.      Travis County operates a two-tiered system of magistration based on whether arrestees can afford an attorney.  Arrestees who can afford to hire a lawyer gain access to a specialized process for magistration, the "Attorney Bonds" process, in which their attorney receives notice of information in the government's allegations and an opportunity to present new facts to the magistrate. Arrestees who cannot afford a lawyer receive no information about the government's allegations, and instead appear unrepresented before the magistrate.

3.     Arrestees who stand unrepresented at magistration are forced to make an uncounseled strategic choice between waiving the right to silence or waiving the right to be heard on bail and release from jail. Arrestees who remain silent, or fail to make a persuasive case for release, are more likely to be detained pretrial than arrestees who can afford counsel.

4.     Pretrial detention ordered at magistration increases the likelihood that arrestees will receive harsher sentences, plead guilty to charges that could not be proven at trial, or plead guilty to offenses they did not commit. Arrestees accept these plea deals both because they are less able to prepare a defense from jail and because they are desperate to get out.

5.     In addition to the coercive effect of pretrial detention, magistration risks harm to arrestees' criminal cases by prompting inculpatory statements. Arrestees who waive their right to silence in favor of exercising their right to be heard on bail often make statements that limit strategies for their defense, irreparably prejudicing their criminal cases.

6.     Travis County deliberately deprives arrestees of counsel at magistration. The Commissioners Court rejected grant money to fund counsel at magistration in April 2022. Over the ensuing two years, the County has failed to provide counsel through other means, depriving arrestees of representation that is provided in other communities in Texas.

7.     Accordingly, this action seeks a declaratory judgment affirming Travis County's obligation to provide counsel at magistration under the Sixth Amendment right to counsel and the Fourteenth Amendment rights to due process and equal protection.

## JURISDICTION AND VENUE

8.     This is a civil rights action arising under 42 U.S.C. § 1983, 28 U.S.C. § 2201 et seq., and the Sixth and Fourteenth Amendments to the United States Constitution. This Court has

jurisdiction under 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (civil rights jurisdiction).

9.      Venue in this Court is proper under 28 U.S.C. § 1391 because Travis County is located within the district, and a substantial part of the events giving rise to these claims occurred and will occur in this district.

## PARTIES

10.     Plaintiff Skylor Johnson was arrested on April 9, 2024 and booked into Travis County Jail. He has been homeless for years and he cannot afford to retain a lawyer. He requested a court-appointed lawyer, but no lawyer has been appointed for him. He is awaiting appointment of counsel while he is detained in Travis County Jail under a pretrial detention order issued against him, without counsel, at magistration. He seeks to represent a Plaintiff class of all similarly situated detainees at Travis County Jail.

11.     Defendant Travis County is a county created under the laws of the State of Texas. The Travis County Commissioners' Court is the final county policymaker for hiring and supervising magistrate judges, and for funding counsel for indigent criminal defendants.

## FACTUAL ALLEGATIONS

12.     Magistration is the first appearance before a judge after arrest for criminal charges in Travis County. The magistrate informs the arrestee of the charges against them and makes an initial bail determination.

13.     For arrestees who cannot afford to hire counsel, Travis County magistration requires arrestees to waive one of two rights: the right to remain silent, or the right to be heard at the bail determination. Arrestees risk irreparable harm to their criminal cases no matter what option they choose, through the coercive effect of pretrial detention ordered at magistration,

inculpatory statements they make at magistration, or both. The assistance of counsel at magistration is necessary to help avoid these harms.

## I.    What Happens at Travis County Magistration

### A.    The Government Investigates and Presents Its Case to the Magistrate

14.    The government begins preparing for magistration when an arrestee is booked into Travis County Jail. An officer from the Pretrial Investigations Unit conducts an investigation into each arrestee and presents findings and a recommendation to the magistrate. The Pretrial Investigations Unit is a team within Travis County's Pretrial Services Department that investigates information concerning pretrial release and recommends bail orders to the magistrate.

15.    The pretrial officer begins their investigation by compiling information from an interview with the arrestee. Pretrial officers are required to investigate and report information including the arrestee's:

    a.   Finances, including inability to afford counsel;

    b.   Unlawful presence in the United States;

    c.   Arrest record, previous incarceration, or current status on probation or parole;

    d.   Relationship to the complaining witness, and contact information for the complaining witness;

    e.   Use of illegal drugs in the last six months, and whether they have a substance abuse problem. Officers are instructed that it is "important to mention" whether the arrestee uses drugs "including marijuana."

16.    The pretrial officer uses the arrestee's financial information to recommend whether the arrestee qualifies for appointed counsel. The officer does not actually appoint counsel, but instead saves this recommendation for later use by other County employees.

17.    The pretrial officer obtains a probable cause affidavit describing the allegations underlying each charge from the arresting officer.

18.    If the pretrial officer believes the probable cause affidavit is lacking in sufficient detail, the pretrial officer asks law enforcement to supplement the allegations against the arrestee. For example, the officer contacts the District Attorney's office for more information about the alleged value of property loss.

19.    The pretrial officer also contacts the complaining witness. If the complaining witness is opposed to release, the pretrial officer documents their opposition for the magistrate. The pretrial officer also indicates whether the officer believes the arrestee is likely to have contact with the complaining witness again, or if they are strangers to one another.

20.    In cases involving allegations by a detective, the pretrial officer contacts the detective to ask about other alleged victims and documents these allegations for the magistrate's review. If relevant to the alleged offense, the officer also documents the detective's description of restrictions and ongoing investigations by Child Protective Services.

21.    The pretrial officer copies information from national, state, and local databases concerning the arrestee's pending charges and determines how many prior sentences to incarceration the arrestee has received. The officer also determines whether any warrants qualify as warrants for failure to appear issued in the last 24 months, and documents those warrants for the magistrate.

22.     The pretrial officer further investigates the arrestee by contacting the arrestee's probation or parole officer, if applicable. Among other information, the officer asks for the probation or parole officer's opinion on the likelihood that the arrestee will return to court, whether the arrestee is enrolled in counseling, and whether the arrestee is "compliant" with counseling. If the arrestee is involved in a pending case in a drug court program, the pretrial officer similarly asks and documents whether drug court staff believe the arrestee is in "compliance" with the program.

23.     The pretrial officer investigates the arrestee's character by calling the arrestee's "references": the closest family members or loved ones the arrestee named during their interview. Pretrial officers are explicitly instructed to ask references for more than a simple verification of employment and contact information, and instead ask open-ended questions about the arrestee. Sample questions that pretrial services officers should ask references include whether the arrestee is a responsible person, whether the arrestee has any gang affiliation, and whether arrestees who are minors tend to follow house rules. Pretrial officers are also advised against identifying themselves as agents of the criminal justice system, and instead advised to identify themselves as calling "from Travis County."

24.     The pretrial officer uses the foregoing information to complete an actuarial risk assessment for the arrestee and documents the risk assessment score for the magistrate.

25.     In addition to the pretrial investigation, during business hours, the prosecution screens cases and commits to pursuing charges by submitting a signed "Acceptance of Charges" document. For example, in felony cases, the document states "The District Attorney's office has reviewed the case listed below and determined that felony charges should be filed at this time."

26.    After the pretrial investigation, the pretrial officer recommends "yes," "no," or "incomplete" concerning release on personal bond. Pretrial officers are generally prohibited from recommending personal bond for dozens of reasons, including "no place to live," or "lacks references," meaning the arrestee's "references" do not answer calls from, or refuse to speak to, the pretrial officer.

27.    The magistrate reviews the investigation and recommendation, then makes a preliminary determination about release before questioning the arrestees.

**B.    The Magistrate Questions Arrestees Who Cannot Afford a Lawyer**

28.    The next step in magistration depends on whether or not the arrestee is able to retain a lawyer for magistration.

**i.    The Magistrate Questions the Arrestees**

29.    Arrestees who cannot afford a lawyer appear before the magistrate after they are booked into jail. The arrestees are required to appear in jail-issued striped uniforms, which they must change into as part of the booking process.

30.    Most arrestees are assembled in small rooms in the basement of the jail to appear before the magistrate via video. Some arrestees appear via video from other areas including jail cells. For arrestees in jail cells, jail staff often point a camera at a jail cell door, and conduct the proceeding through the narrow meal tray slot.



31.     The above still images were captured from videos on Travis County's public YouTube page where magistrations are livestreamed and saved. Faces in these images have been blurred.

32.     The magistrate begins the proceeding by telling arrestees that the magistrate will be explaining the arrestees' charges, their rights, and their options for getting out of jail.

33.     The magistrate reads the arrestees a list of rights. The magistrate tells arrestees they have the right to remain silent and warns them that anything they say can be used against them in their criminal cases.

34.     The magistrate tells arrestees they have the right to talk with a lawyer before making any decisions about their case, and the right to have a lawyer present during discussions with the police or prosecution about their case. At the same time, the magistrate typically tells arrestees a court-appointed lawyer will not be available to them for four days.

35.     The magistrate explains that a criminal offense can affect a noncitizen's immigration status, then asks if any of the arrestees is not from the United States.

36.     The magistrate then begins discussing the bail determination. The magistrate typically tells arrestees that if they do not receive a personal bond during magistration, there are only three ways to get prompt release out of jail, and hiring a lawyer is one of those three ways out. The magistrate explains that a lawyer can come visit the magistrate to make arguments based on the unique facts of each case that the arrestee cannot make themselves.

37.     The magistrate bases his decision in part on the probable cause affidavit. Arrestees are not permitted to review the statement, and the magistrate does not explain the substance of the allegations to the arrestees.

38.     The magistrate also bases his decision on information from the government's investigation including the arrestee's criminal history, statements from references, and past failures to appear in court. Pretrial services does not provide these records to the arrestees. The magistrate does not provide these records or explain the substance of these records to the arrestees.

39.     The magistrate calls each individual arrestee forward. The magistrate sometimes asks questions based on his review of the government's investigation.

40.     The magistrate instructs arrestees not to discuss the facts of their case, despite the fact that the judge must consider the nature and circumstances of the alleged offense to make a release determination.

41.     The magistrate then sometimes asks questions that often bear directly on the arrestee's case. For example, the magistrate commonly asks questions about the arrestee's relationship to the complaining witness.

42.     The magistrate then announces the conditions of release to the arrestee.

**ii.     Arrestees Who Retain a Lawyer Gain Access to a Specialized Process for Magistration**

43.     Arrestees who pay for a lawyer gain access to the "Attorney Bonds" process, a specialized process for magistration. The pretrial officer gives the arrestee's lawyer copies of nearly all information the government presented to the magistrate, including the officer's sworn allegations, the criminal history prepared by the pretrial officer, and any reasons for the pretrial officer's recommendation against personal bond.

44.     The lawyer is allowed to provide additional "references" to the pretrial officer and tell the pretrial officer any other information bearing on release, including information to

mitigate reasons why the pretrial officer recommended against release on personal bond. The pretrial officer then reevaluates their personal bond recommendation based on this information.

45.    The lawyer reviews this information and performs a limited investigation, like contacting treatment programs that might accept the arrestee.

46.    The lawyer then visits the magistrate's office and makes an argument for release, which may include proposal of a release plan.

47.    A lawyer can typically secure an audience with the magistrate on a faster timeline than arrestees without lawyers who wait to be questioned as a group. In these instances, arrestees who have a lawyer are not directly questioned by the magistrate. Magistrates are likelier to grant release based on an argument by an attorney than on the pretrial investigation alone.

## II.    Travis County Magistration Inherently Risks Permanent Harm to Criminal Cases

48.    For those who cannot afford an attorney, Travis County magistration requires arrestees to waive one of two rights: the right to remain silent, or the right to a prompt bail hearing. Arrestees risk irreparable harm to their criminal cases no matter what option they choose, through the coercive effect of pretrial detention ordered at magistration, inculpatory statements arrestees make at magistration, or both. The assistance of counsel at magistration is necessary to help avoid these harms.

### A.    Arrestees May Remain Detained Under the Magistrate's Order for Weeks

49.    For arrestees who choose to remain silent, or who fail to make a persuasive case for release, the magistrate is more likely to order pretrial detention.

50.    Incarceration in jail is an inherently harmful deprivation of liberty.

51.    Incarceration in jail also poses health and safety risks. Though the causes of death have not been publicly revealed, two people booked into the Travis County Jail died in March

2024. A lawsuit filed earlier this year alleges that Travis County is liable for an arrestee's death by suicide.

52.     Beyond the jail time itself, a person who is detained for even a few days can face serious collateral consequences. She may lose income from missing work or even get fired altogether. She may miss rent payments and get evicted. She may suffer setbacks in an educational program. She may even lose custody of her children because of her inability to arrange for child care. For people with disabilities, pretrial detention often means missed medications and disruption of routines that can be vital for managing disability, increasing disability-related symptoms, and potentially resulting in decompensation. Pretrial detention for these few days is so destabilizing that it is associated with an increased risk that the person detained will be arrested for a new crime after release. For example, Mr. Johnson and his girlfriend are experiencing homelessness. Mr. Johnson is concerned that his girlfriend will be alone overnight in the park where they usually sleep. He would like to get out of jail as quickly as possible to protect her from the vulnerability of sleeping alone.

53.     The period of pretrial detention ordered at magistration also provides the prosecution with crucial leverage and leaves the arrestee at a severe disadvantage in plea bargaining.

54.     People whom the magistrate agrees to release leave the jail within hours. They are able to meet their lawyers and prepare for trial while living freely in the community.

55.     People who are detained at magistration are typically sent to the Del Valle Correctional Complex about twenty minutes away from downtown Austin.

56.     Appointment of an attorney takes up to four days under Travis County's Indigent Defense Plan. The County requires attorneys to interview clients facing misdemeanor charges within five days, and clients facing felony charges within ten days.

57.     The amount of time arrestees have to wait for their next court appearance depends on whether their most serious charge is a felony or a misdemeanor.

58.     People charged with felonies will remain detained indefinitely absent action from their later-appointed attorney. Travis County does not systematically review bail orders issued at magistration for people charged with felonies.

59.     It is significantly more time consuming for a later-appointed attorney to seek release after magistration than it is for an attorney to provide representation at magistration. An attorney representing arrestees at magistration can interview new clients in the booking area, make necessary phone calls, consult with the duty prosecutor, and appear before the magistrate to make arguments within the hour.

60.     By contrast, later-appointed attorneys must schedule time to drive to Del Valle Correctional Complex, wait for jail staff to transport clients from different housing pods to the consultation rooms, contact different assigned prosecutors about release, and file release motions before different judges as cases are assigned out to trial judges. As a result, for felony arrestees, the bail orders issued at magistration often remain in place for a week or more.

61.     People who are charged with only misdemeanors are automatically scheduled for the "Bond Review Docket." The "Bond Review Docket" consists almost entirely of arrestees capitulating and entering pleas. Prosecutors offer arrestees faster release from jail in exchange for a plea, and most arrestees accept. Similarly situated arrestees who were released at magistration do not face this pressure.

62.     The result is the same: whether people are charged with felonies or misdemeanors, detention orders issued at magistration can wreak havoc in their lives and severely disadvantage their position in plea bargaining.

63.     Pretrial detention ordered at magistration can last four days before an attorney is even appointed, much less before the attorney has the opportunity to seek pretrial release. That period of time is prejudicial to the outcome of the criminal case. Studies have shown that as little as three days of pretrial detention increases the likelihood of criminal convictions, guilty pleas, punishment with jail or prison time, and punishment with a longer term of jail or prison time. Controlling for all other factors, pretrial detention is the greatest predictor of a conviction. Pretrial detention has been shown to cause criminal convictions by increasing guilty pleas, primarily by people who otherwise would have had their cases dismissed.

64.     These effects hold true in Travis County. The period of detention following magistration regularly coerces people into pleading guilty to charges that would otherwise be dismissed, or accepting a plea deal to a term of incarceration when they could otherwise negotiate a more favorable sentence. People detained at magistration often effectively serve their sentence of incarceration before a prosecutor offers a plea deal.

65.     This outcome stands in stark contrast to people who are released. For these people, many felony cases and most misdemeanor cases resolve with either dismissal or a plea deal that does not require incarceration.

66.     Pretrial detention also impedes a person's ability to prepare their defense because they are less able to assist their attorney in the investigation and preparation of their case. This pretrial period, particularly the days immediately following arrest, is critical for preserving physical evidence and establishing contact with witnesses before their memories fade.

67.     Without counsel, people in detention are unable to preserve evidence like security videos, toxicology screenings, and photographs of injuries in the days immediately following arrest. They are also unable to help find or meet with witnesses, especially those who may be reluctant to speak with counsel. The loss of critical evidence and witnesses supporting the arrestee's case makes a defendant more likely to accept a prosecutor's plea offer.

68.     Arrestees in detention are also unable to care for their families, maintain employment, enroll in counseling, or take other steps to demonstrate their good-faith intention to lead law-abiding, stable lives once released back into society.

**B.      Arrestees Need Counsel at Magistration to Prevent Unnecessary and Irreparable Harm of Pretrial Detention**

69.     Counsel's advocacy at an initial bail hearing significantly increases the chances of release and decreases the total length of time arrestees spend in pretrial detention. Counsel's advocacy at an initial bail hearing also increases the likelihood that the arrestee's case is dismissed, or that their charges are reduced from felonies to misdemeanors.

70.     Bail determinations are legally complex. The magistrate is required by statute to consider the nature of the alleged offense and the circumstances under which the offense is alleged to have been committed, including whether the offense is an offense of violence as defined by state law or otherwise involved violence directed against a peace officer; the ability to make bail; the future safety of a victim of the alleged offense, law enforcement, and the community; criminal history record information, including pending charges and prior failures to appear; and citizenship status. Counsel's knowledge of constitutional law, Texas criminal procedure, and Texas criminal law is necessary to present evidence and make competent arguments in favor of release.

71.     Counsel is necessary to make an informal offer of proof on facts that bear on the bail determination, including practical facts about the arrestee's ability to pay, whether the arrestee poses a danger or a flight risk, and whether alternatives to cash bail would be appropriate—as counsel does for arrestees who can afford a lawyer for magistration. This offer of proof may challenge the government's allegations, charging decision, criminal history characterization, risk assessment score, recommended bail determination, and other aspects of the government's pretrial investigation. When appropriate, counsel can make phone calls to clarify or rebut information in the pretrial investigation, and proffer that evidence to the court.

72.     Counsel's knowledge of the local criminal legal system is necessary to make arguments about alternative conditions of release that could reasonably assure appearance in court. For example, an attorney will know about pretrial supervision conditions and supportive interventions available through the pretrial services mental health unit, alcohol monitoring unit, family violence supervision unit, and electronic monitoring unit. Counsel can draw on knowledge of the release conditions offered through these programs to suggest conditions of release that are adequate to address the magistrate's concerns about flight risk or danger.

73.     Counsel can also draw on their knowledge of possible biases or inaccuracies reflected in the arrestee's risk assessment score to contextualize that score for the magistrate. The pretrial officer assigns a score to each arrestee using the Ohio Risk Assessment System-Pretrial Assessment Tool (ORAS-PAT), an actuarial tool that purports to predict the risk of each arrestee being rearrested or failing to appear during the pretrial period. This tool gives higher risk scores to people solely because (for example) they have moved in the past six months, or they do not have a full-time job. Defense lawyers are familiar with these features of risk assessments and can make arguments contextualizing a risk score for the judge.

74.     In the absence of defense counsel, judges typically set bail based on the pretrial investigation alone. Even when an arrestee answers the magistrate's questions or makes release arguments during magistration, the judge's choice is between the arrestee's unsupported claims and the word of police and pretrial officers.

75.     Other communities in Texas have increased their rates of pretrial release and saved money by providing counsel at magistration.

**C.      Arrestees' Statements Can Irreparably Harm Their Criminal Cases**

76.     Arrestees regularly waive their right to remain silent in response to the magistrate's statements or questions during magistration. Arrestees also regularly waive their right to remain silent in response to the magistrate's warning that, if arrestees cannot pay for a lawyer, they will need to wait a few days before a lawyer will be appointed who is able to seek release. Observation of hundreds magistrations in early 2024 confirmed that arrestees regularly make substantive statements with the potential to irreparably harm their criminal cases.

77.     Some statements are apparent admissions of guilt, likely intended to elicit the Court's sympathy and minimize the alleged offense. For example, thus far in 2024, arrestees have said things like:

- It happened a long time ago

- I have no choice but to be in that area (at the site of the alleged trespass)

- I was using the bathroom (at the site of the alleged trespass)

- Oh . . . well, I guess it was a crime

- I was not the aggressor

- If I could do it all over again, I would

78.     Even statements that are not admissions of guilt may waive defenses, concede relevant facts, create impeachment material should the arrestee decide to take the stand, or

otherwise suggest investigative or strategic leads to the prosecution. For example, thus far in 2024, arrestees have said things like:

- I had a license to carry that weapon

- Another man committed the assault

- I was not there (at the scene of the alleged theft)

- There was no resisting

- I was never with that woman

- I don't do drugs or drink alcohol

- I am not the person the cops are talking about

- I don't mess around with weapons because they're dangerous

- My identity was stolen

79.    Magistrates can also ask questions that are nearly certain to elicit these harmful statements. For example, in early 2024, magistrates asked questions like:

- Do you have some good reason for packing heat downtown?

- I couldn't tell from reading the police report whether you guys knew each other from the past or not. Is there a previous dating relationship connection here? ("Dating relationship" is an element of a criminal offense.)

- I really have no idea why you two old guys are fighting. Why are you fighting sir?

80.    Arrestees also regularly make statements confirming the coercive effect of pretrial detention by expressing concern that detention will threaten their employment, housing, child care, or scheduled medical care before a court-appointed lawyer can seek their release.

81.    Magistration is typically live streamed to the public and available for later viewing through links on Travis County's YouTube channel. These videos are organized by date of magistration and available for law enforcement agencies, including the prosecution, to review for investigative leads or impeachment material.

82.    Counsel is necessary to help arrestees avoid the risk of self-incrimination. Without counsel, there is no way for arrestees to be heard on a central element of the bail determination—the nature and circumstances of the offense alleged—without suffering a significant risk of inadvertent self-incrimination.

## IV.    Travis County is Responsible for Providing Counsel at Magistration

83.    The lack of counsel at magistration is directly attributable to policies enacted by the Travis County Commissioners' Court. The Commissioners' Court has refused offers from both the Chief Public Defender and Texas A&M University to provide defense counsel at no additional cost to the County. The Commissioners' Court has also repeatedly negotiated contracts with the City of Austin that detail requirements for magistration without requiring representation by counsel.

84.    The Commissioners' Court controls procedures for magistration through negotiation of a contract with the City of Austin for the professional services of Austin Municipal Court judges to preside over magistration in the Travis County Jail ("magistration contract"). This contract and its amendments are negotiated over months between city and county officials.

85.    The currently effective magistration contract was signed in 2018. The terms of the 2018 magistration contract range from responsibility for protecting specific constitutional rights of arrestees to responsibility for providing parking spaces and printer ink. If the County had any intention of providing court-appointed counsel at magistration, it would have been referenced in this contract. Instead, on the subject of counsel at magistration, the 2018 contract states no more than that the "County shall be responsible to provide such access to magistration proceedings by attorneys . . . as may be required by law."

86.     The Travis County Public Defender's Office was created in 2019. The Chief
Public Defender subsequently offered to represent arrestees at magistration. She proposed to do
so without any increase in her budget by assigning existing staff to a pilot program. The
Commissioners' Court declined to approve a pilot program without participation from the private
court-appointed defense bar, Capital Area Public Defender Services (CAPDS).

87.     In 2022, researchers at Texas A&M University's Public Policy Research Institute
offered Travis County over half a million dollars to fund CAPDS participation in the pilot
program and to document the effect of providing counsel at magistration over the course of a
year.

88.     Travis County implemented the pilot program and provided counsel at
magistration for less than two weeks in April 2022. During that period, court-appointed counsel
secured dismissal of felony charges at magistration, secured pretrial release that magistrates
otherwise would not have granted, and persuaded magistrates to deny harmful emergency
protective orders.

89.     Shortly thereafter, the Travis County Sheriff requested to terminate the pilot
because she and other county policymakers had not adequately planned for the logistics of
attorney/client consultation. The Commissioners' Court then reversed course and voted to
terminate the pilot and reject the grant money from Texas A&M.

90.     Advocates have lobbied the County to reinstitute counsel at magistration since
April 2022. After a year and a half without meaningful progress, beginning in October 2023,
advocates sent the County repeated letters warning that providing counsel at magistration is a
constitutional obligation that cannot be delayed indefinitely. The County Judge's office did not

respond to these letters or related requests for information under the Texas Public Information Act.

91.    Instead, in 2024, the County has publicly announced just two eight-hour test shifts without any plan to begin providing counsel at scale. The County has also amended the magistration contract to specify that City magistrates will conduct counseled magistration at no more than four eight-hour shifts per month. City magistrates conduct magistration at roughly ninety total magistrate shifts per month.

92.    The Travis County Commissioners' Court is the final county policymaker for contracting for professional services.

93.    The Travis County Commissioners' Court is the final county policymaker for funding counsel for indigent defendants in Travis County criminal proceedings.

**V.    This Controversy Warrants Declaratory Relief in Federal Court**

94.    A ruling from this Court has the power to affirm Travis County's constitutional obligation to provide counsel at magistration.

95.    There is no state court process by which class members can request a court-appointed lawyer to represent them at magistration.

96.    Magistrates are unwilling to rule on legal arguments that unrepresented arrestees raise at magistration. Magistrates instruct arrestees to wait a few days after magistration is complete to discuss any arguments with their subsequently appointed lawyer.

97.    The only legal issues magistrates are authorized to determine at Travis County magistration are whether there is probable cause to believe the arrestee committed the alleged offense, whether there is reasonable cause to believe that the arrestee has a mental illness or intellectual disability, and the conditions under which the arrestee will be admitted to bail.

98.    Travis County is not a party to class members' underlying criminal court proceedings.

99.    Plaintiff's counsel have engaged in substantial investigation and advocacy concerning the right to counsel at Travis County magistration. Plaintiff's counsel are not aware of any intention by Travis County to sue the named Plaintiff, or any other class members, to settle their right to counsel claims in another forum.

100.    This investigation indicates that a federal declaration of the right to counsel at Travis County magistration would cause Travis County to promptly provide counsel at magistration.

## CLASS ACTION ALLEGATIONS

101.    Plaintiff Skylor Johnson seeks declaratory relief on behalf of himself and all others similarly situated under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. With respect to all counts, Plaintiff seeks to represent a class of all people who are unable to retain counsel and are detained at Travis County Jail awaiting magistration for criminal charges punishable by imprisonment.

102.    Joinder of all members of this class is impracticable. The class is constantly changing as law enforcement officers book new arrestees into jail and arrestees are magistrated hours or days later.

103.    The putative class seeks declaratory relief against a practice that applies to all class members. Resolution of the legal and factual issues here will determine whether all members of the class are entitled to the constitutional relief that they seek.

104.    Questions of fact that will generate answers common to the class include the following:

- Whether counsel is provided for class members magistrated at Travis County Jail;

- Whether Travis County magistration inherently risks issuing pretrial detention orders that irreparably harm class members' criminal cases;

- Whether counsel's assistance at magistration can help avoid erroneous pretrial detention and/or avoid the risk of irreparable harm to an arrestee's criminal case; and

- Whether there is access to a specialized process of Travis County magistration accessible to only those arrestees who are able to retain a lawyer for magistration.

105.    Questions of law that will generate answers common to the class include the following:

- Whether Travis County magistration is a critical stage of prosecution under the Sixth Amendment;

- Whether Travis County's failure to provide counsel at magistration deprives class members of their right to due process;

- Whether Travis County's failure to provide counsel at magistration violates class members' right to equal protection of the law; and

- Whether deprivation of counsel at magistration is a Travis County policy for purposes of 42 U.S.C. § 1983.

106.    The named Plaintiff's claims are typical of the claims of the other class members. Each class member seeks relief from the same conduct: magistration without the assistance of counsel.

107.    The named Plaintiff is an adequate class representative because he suffers the same constitutional harms as similarly-situated class members, and because his interests in the vindication of the legal claims he raises are aligned with the interests of the other class members.

108.    The named Plaintiff is a member of the class, and there are no known conflicts of interest with members of the class.

109.    The named Plaintiff is a resident of Travis County. He brings this lawsuit to vindicate the rights of all members of the class. He is willing to fulfill the duties of a class representative.

110.    The named Plaintiff is represented by attorneys from the American Civil Liberties Union Foundation, the American Civil Liberties Union of Texas Foundation, and Weil, Gotshal & Manges LLP. Counsel have extensive combined experience litigating class actions and complex civil rights matters in federal court and extensive knowledge of the details of Travis County magistration. Counsel include litigators who have experience litigating similar issues in class action lawsuits around the country. Counsels' qualifications to serve as class counsel are set forth in the motion for class certification.

111.    The interests of the members of the proposed class will be fairly and adequately protected by the named Plaintiff and his attorneys.

## CLAIMS FOR RELIEF
### Under 42 U.S.C. § 1983

### COUNT ONE
### Violation of the Sixth Amendment Right to Counsel

112.    Plaintiffs incorporate all of the allegations above.

113.    Travis County magistrations inherently risk prejudicing the outcome of a class member's criminal case by imposing a period of pretrial detention that severely disadvantages

them in plea bargaining. This period of pretrial detention effectively requires a class member to serve a sentence of incarceration before facing a prosecutor at the bargaining table, even in cases that would plead to non-carceral sentences if the arrestee were released. Pretrial detention coerces class members to accept plea deals in exchange for a guarantee of immediate or faster release from custody. Pretrial detention also prevents arrestees from helping defense counsel investigate and preserve evidence in the crucial period immediately following arrest.

114.    Travis County magistration inherently risks prejudicing the outcome of a class member's criminal case by requiring class members to waive their right to silence or their right to a prompt bail hearing. Class members who make the uncounseled decision to waive their right to silence risk making inculpatory statements that harm their position in plea bargaining by suggesting investigative leads, providing impeachment material, or conceding elements of the offense itself.

115.    Counsel's presence at magistration is necessary to help avoid these risks.

116.    The lack of counsel at Travis County magistration violates class members' Sixth Amendment right to counsel.

## COUNT TWO
### Violation of the Fourteenth Amendment Right to Due Process

117.    Plaintiffs incorporate all of the allegations above.

118.    Without counsel at magistration, class members are deprived of notice of the basis for the government's argument that the magistrate should deny release on personal bond.

119.    Without counsel at magistration, class members are deprived of a meaningful opportunity to be heard.

120.    The lack of counsel at Travis County magistration violates class members' Fourteenth Amendment right to due process.

**COUNT THREE**
**Violation of the Fourteenth Amendment Right to Equal Protection:**
**Discrimination on the Basis of Poverty**

121.    Plaintiffs incorporate all of the allegations above.

122.    Travis County operates a two-tiered system of magistration based on whether a person can afford an attorney.  Arrestees who can retain a lawyer for magistration gain access to a specialized process for magistration, the "Attorney Bonds" process, in which the defense receives notice of information in the pretrial investigation, an opportunity to persuade the pretrial officer to change their recommendation, and an opportunity to proffer facts from their own investigation to the magistrate.

123.    Class members who cannot afford an attorney are denied access to this process. For them, Travis County conducts magistration under a different set of procedures that provide far fewer protections against wrongful detention.

124.    Denying class members meaningful access to magistration that is guaranteed for individuals who can afford an attorney violates class members' Fourteenth Amendment right to equal protection of the laws.

**RELIEF REQUESTED**

Plaintiffs request that this Court issue the following relief:

1.    An order certifying the class, defined above;

2.    A declaratory judgment against Travis County holding that deprivation of counsel at Travis County magistration violates the Sixth Amendment right to counsel and the Fourteenth Amendment rights to due process and equal protection;

3.    An order granting reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

4.    Reasonable service awards for the class representatives; and

5.      Any other relief this Court deems just and proper.

Respectfully Submitted,

/s/ Trisha Trigilio
Trisha Trigilio
Texas State Bar Number: 24075179
American Civil Liberties Union
 Foundation, Criminal Law Reform
 Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
trishat@aclu.org

/s/ Jessica L. Falk
Jessica L. Falk
New York Bar No. 4763686*
Weil, Gotshal & Manges
767 Fifth Avenue
New York, New York 10153
(212) 310-8151
jessica.falk@weil.com

*Attorneys for Plaintiff*

*Motions for *pro hac vice* admission
forthcoming

/s/ Savannah Kumar
Savannah Kumar
Texas State Bar Number: 24120098*
Tommy Buser-Clancy
Texas State Bar Number: 24078344
Adriana Piñon
Texas State Bar Number: 24089768
ACLU Foundation of Texas, Inc.
P.O. Box 8306,
Houston, TX 77288
(713) 942-8146
skumar@aclutx.org
tbuser-clancy@aclutx.org
apinon@aclutx.org